## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HAROLD C. LINDSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 07-01939 (RBW) |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA and | ) | |
| CHIEF OF FIRE AND EMERGENCY | ) | |
| MEDICAL SERVICES, DENNIS L. | ) | |
| RUBIN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant District of Columbia (hereinafter "the District"), by and through

counsel, and pursuant Federal Rule of Civil Procedure 12(c), respectfully moves this

Court for an Order granting judgment on the pleadings in its favor.  Plaintiff may not

maintain his Age Discrimination claim against the District under 29 U.S.C. § 626,

because it has been previously litigated in this very court which issued a final decision on

the merits. Plaintiff's claim is thus barred by the doctrine of *res judicata.*

In support thereof, defendant refers this Court to the attached memorandum of

points and authorities.  Defendant respectfully requests that this Court grant its Motion

for Judgment on the Pleadings.

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia


GEORGE C. VALENTINE

Deputy Attorney General, Civil Litigation Division


_____/s/ Patricia A. Jones_____
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV


_____/s/ C. Vaughn Adams_____
C. VAUGHN ADAMS [449770]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6519; (202) 727-6295


<u>Local Rule 7(m) Certification</u>

Although LCvR 7(m) is not applicable since this is a dispositive motion, I do

hereby certify that on July 23, 2008, I attempted to contact counsel for the Plaintiff,

Donna Rucker, Esq., to seek consent to the relief sought in this motion. Plaintiff's

counsel was not available to provide consent to the relief sought.


_____/s/_____
C. VAUGHN ADAMS
Assistant Attorney General, D.C.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HAROLD C. LINDSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 07-01939 (RBW) |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA and | ) | |
| CHIEF OF FIRE AND EMERGENCY | ) | |
| MEDICAL SERVICES, DENNIS L. | ) | |
| RUBIN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

### I. PRELIMINARY STATEMENT

Plaintiff Harold C. Lindsey began work with the Defendant as a firefighter in 1979. In 1989, he was promoted to Inspector and in January 2001, promoted to the rank of Sergeant. Complaint, at ¶ 10. In 1991, Plaintiff was promoted to a Fire Inspector. *See* **Exhibit B**, at p. 2. As an Inspector, Plaintiff, together with his canine partner, received extensive training as an Accelerant Detection Canine Team. Complaint, ¶13. Plaintiff subsequently served the District of Columbia as the Accelerant Detection Canine Handler and as a Sergeant with the Fire/Arson Investigation Unit. Complaint ¶¶ 10-17. In February, 2001, Plaintiff was removed from his Handler position with the Fire/Arson Investigation Unit. Complaint, ¶17.

On August 8, 2002, Plaintiff sued the District of Columbia and Fire Chief Adrian Thompson, alleging "Age Discrimination and Title VII Violations." *See* Plaintiff's Complaint For Damages And Equitable Relief in *Harold Lindsey v. District of Columbia*

*et al.,* Civil Action Number 02-1592, filed in the United States District Court for the District of Columbia, and hereto attached as **Exhibit** A. By Memorandum Opinion, dated February 3, 2005, the case was dismissed.  See **Exhibit B**.  In the 2002 case, Plaintiff alleged Age Discrimination by the District of Columbia based on the sole fact that he was replaced as canine handler by a person younger than forty (40) years old.  *See* Memorandum Opinion in CA 02-1592 at 7, hereto attached as **Exhibit B** (dismissing plaintiff's complaint and denying all pending motions).

In her detailed Memorandum Opinion, United States District Judge Rosemary M. Collyer found that Plaintiff was unable to counter the District's legitimate, nondiscriminatory explanation for its decision to remove him as the Accelerant Canine Detection Handler. *See* Memorandum Opinion, **Exhibit B,** at p. 14. The District Court applied the familiar *McDonnell-Douglas* burden-shifting analysis, and determined that although plaintiff had presented a *prima facie* case of Age Discrimination, the District had met its burden of production by articulating a legitimate, nondiscriminatory reason for the challenged employment decision. *See* Memorandum Opinion, **Exhibit B** at pp. 8, 13-14. The Court found that Plaintiff did not satisfy the subsequent burden shift back to him under *McDonnell-Douglas* because he had not presented sufficient evidence to find that the employer's asserted justification was false. *See* Memorandum Opinion, **Exhibit B** at p. 13.

Despite obtaining a final judgment on the merits of his 2002 case, on October 26, 2007, Plaintiff sued the District of Columbia Department of Fire and EMS and Chief Dennis L. Rubin for alleged Age discrimination and violation of Title VII.  In fact, Plaintiff's present action sets forth nearly identical legal claims grounded in the exact

same facts as alleged in his 2002 case. *Compare,* **Exhibit A** *with* the Complaint in this

case. Plaintiff again alleges that the District improperly removed him from his position as

the Accelerant Detection Canine Handler and engaged in Age Discrimination. Complaint,

at ¶17. Again, Plaintiff bases his claim on the lone fact that the person who replaced him

as the Handler was under the age of 40. Complaint, ¶¶ 35-36.


As set forth below, the District is entitled to judgment on the pleadings as a matter

of law.

II. ARGUMENT

**A.    <u>Standard for Judgment on the Pleadings under Rule 12(c)</u>**

Under Fed. R. Civ. P. 12(c), a party may move for judgment on the pleadings,

after the pleadings are closed and early enough not to delay trial.

The pleadings are now closed as defendants have filed an answer to Plaintiff's

complaint. Because discovery will not close until November 12, 2008, and neither party

has yet initiated discovery, this motion for judgment on the pleadings will not unduly

delay trial.


**B.    <u>Plaintiff's Claims are Barred by the Doctrine of *Res Judicata*</u>.**

Plaintiff's claims are barred under the doctrine of *res judicata* or claim preclusion.

Under the doctrine of *res judicata* (claim preclusion), a final judgment on the merits of a

claim bars re-litigation in a subsequent proceeding of the same claim between the same

parties or their privies. *Patton v. Klein*, 746 A.2d 866 (D.C. 1999); *Shin v. Portals

Confederate Corp.*, 728 A.2d 615, 618 (D.C. 1999); *Faulkner v. GEICO*, 618 A.2d 181,

5

183 (D.C. 1992); *Stutsman v. Kaiser Found. Health Plan,* 546 A.2d 367, 369-70 (D.C. 1988); *Smith v. Jenkins*, 562 A.2d 610, 613 (D.C. 1989). The doctrine bars re-litigation not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented. *Cromwell v. County of Sac,* 94 U.S. 351, 353 (1877); *Shin*, 728 A.2d at 618; *accord e.g.*, *Molovinsky v. Monterey Coop., Inc.,* 689 A.2d 531, 533 (D.C. 1997); *Faulkner*, 618 A.2d at 183**.**

A defendant seeking dismissal of a complaint on *res judicata* grounds must show: (1) that the prior decision on which he bases his *res judicata* claim was a decision on the merits, and (2) that the earlier litigation was based on the same cause of action*. Shin,* 728 A.2d at 618 (quoting *Amos v. Shelton*, 497 A.2d 1082, 1084 (D.C. 1985)). A final judgment on the merits is one that "embodies all of a party's rights arising out of the transaction involved." *Stutsman*, 546 A.2d at 370. For purposes of *res judicata*, the nature and scope of a "cause of action" is determined by the "factual nucleus, not the theory on which a plaintiff relies*."* See *Faulkner*, 618 A.2d at 183 (citing *Stutsman,* 546 A.2d at 370). If there is a common nucleus of facts, then the actions arise out of the same cause of action. *Id*. In determining whether the two actions arise out of the same cause of action, the court must consider the nature of the two actions, the facts necessary to prove each and "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (citing *Smith,* 562 A.2d at 613 (quoting Restatement (Second) of Judgments § 24(2) (1982)).

In C.A. No. 02-1592, Plaintiff sued the District, and Acting Fire Chief Adrian Thompson. Plaintiff alleged that he was removed as a canine handler allegedly because

of his age.   Plaintiff's two complaints are indistinguishable, save for slight and

inconsequential rephrasing. *Compare* Exhibit A *with* Complaint.   In the present action,

Plaintiff has sued the District and Chief of Fire and Emergency Medical Services Dennis

L. Rubin.  As is clearly shown, the same parties and/or their privies are involved in both

cases.  As in C.A. No. 02-1592, Plaintiff avers in this case that he was removed as a

canine handler because of his age.  Plaintiff merely presents additional factual details in

this case that were revealed through prior discovery as a new set of factual circumstances.

*Compare* **Exhibit B** at 1-7 (detailing the facts revealed in discovery) *with* Complaint, at

¶¶ 9-64.

On February 3, 2005, Judge Rosemary Collyer granted summary judgment to the

District defendants in C.A. No. 02-1592.  The District Court examined Plaintiff's claims

at length and wrote:

> "In the absence of discrimination, the Fire Department is entitled to run its
> operations as it sees fit. Defendants assert that they removed Sgt. Lindsey from
> canine handler duties and transferred him to the firefighting Division because he
> could not fully handle the duties of both positions and would benefit from broader
> experience so that the Fire Department could assign him to more kinds of
> positions across the city. . . . [Plaintiff's] arguments are not persuasive and cannot
> overcome the common-sense conclusion that it would be difficult for anyone, no
> matter how well-trained, to perform two fulltime jobs – one mainly in the field
> and one mainly in the office – at the same time." *See* **Exhibit B**, Memorandum
> Opinion at 10-11.

The District Court then concluded:

> "The Court does not sit as a super-personnel department that reexamines an entity's business decisions. The Court must therefore decline Sgt. Lindsey's request that it decide whether it was wise for the D.C. Fire Department to relieve him of duties as a canine handler and maintain his position as a Sergeant in the firefighting Division. Because there is no evidence to counter Defendants' legitimate, nondiscriminatory reasons for their actions, Defendants' motion for summary judgment will be granted and Sgt. Lindsey's complaint will be dismissed." (internal quotes and citations omitted) *See* **Exhibit B**, Memorandum Opinion at 14.

As is readily apparent above, Judge Collyer decided plaintiff's claim on the merits and found in favor of the District defendants. The final Opinion of Judge Collyer operates as a complete bar under the principles of *res judicata* to Plaintiff's ability to proceed in this Court action. As such, judgment on the pleadings is appropriate.

**WHEREFORE**, the District respectfully requests the Court to grant judgment on the pleadings in its favor.

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division


    /s/ Patricia A. Jones
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV


    /s/ C. Vaughn Adams
C. VAUGHN ADAMS [449770]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6519; (202) 727-6295

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HAROLD C. LINDSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 07-01939 (RBW) |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA and | ) | |
| CHIEF OF FIRE AND EMERGENCY | ) | |
| MEDICAL SERVICES, DENNIS L. | ) | |
| RUBIN | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

### <u>ORDER</u>

Upon consideration of Defendant District of Columbia's Motion for Judgment on the Pleadings, the memorandum of points and authorities in support thereof, any opposition thereto, and the record herein, it is, by this Court this _____ day of _____, 2008;

ORDERED that Defendant District of Columbia's Motion for Judgment on the Pleadings shall be and the same is hereby granted; and it is

FURTHER ORDERED:  that judgment as a matter of law is hereby entered in favor of defendant District of Columbia.

_____
REGGIE B. WALTON, Judge
United States District Court
for the District of Columbia

9

**FILED**

AUG 1 2 2002

CLERK U.S. DISTRICT COURT
DISTRICT OF COLUMBIA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### (Civil Division)

**HAROLD C. LINDSAY**
6622 Mastbrook Drive
Fort Washington, Maryland 20744                )

          Plaintiff,                                  )

v.                                                           )

**DISTRICT OF COLUMBIA,**
Serve: Anthony Williams
        441 4TH Street, N.W., #1100
        Washington, D.C. 20001                   )

**ACTING FIRE CHIEF ADRIAN THOMPSON,** )
District of Columbia Fire & EMS Department
1932 Vermont Avenue N.W.                              )
Washington, D.C. 20001

                        )

               **Defendants.**

CASE NUMBER  1:02CV01592

JUDGE: Richard J. Leon

DECK TYPE: Employment Discrimination

DATE STAMP: 08/12/2002

ECF

JURY ACTION

---

### PLAINTIFF'S COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

COMES NOW the Plaintiff, Harold C. Lindsey, by and through counsel, DuBoff &

Associates, Chartered and Donna Williams Rucker, Esquire, and sues the Defendant, District of

Columbia and Acting Fire Chief Adrian Thompson, and in support therefor, states as follows:

### JURISDICTION AND VENUE

1.     Jurisdiction of the Court is proper pursuant to The Age Discrimination in

Employee Act of 1967, 29 U.S.C. §§ 621-634 and Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. §§ 2000(e) et seq.  Venue is appropriate and based on the fact that the

actions complained of are the result of actions and employment practices of Defendant District of

Columbia occurring within the District of Columbia.

2.     Plaintiff, Harold C. Lindsey (hereinafter "Lindsay"), timely filed a complaint with the Equal Employment Opportunity Commission. Plaintiff files this civil action timely and in accordance with the authority noted in his Dismissal and Notice of Rights received on or about May 17th, 2002. (See Exhibit "A").

3.     Plaintiff Lindsey brings this action pursuant to the Age Discrimination in Employment Act for discrimination on the basis of his age (47 years).

## PARTIES

4.     Plaintiff Lindsey is a resident of Prince George's County, in the State of Maryland.

5.     Defendant District of Columbia is a municipal corporation empowered to sue and be sued and is the governmental entity that subjected Lindsay to employment discrimination.

6.     Defendant Adrian Thompson is the acting Fire Chief for the District of Columbia and he was aware of and condoned the actions complained of herein.

## FACTS

7.     Plaintiff Lindsey began working for the Defendant Fire and EMS Department in November, 1979 as a firefighter. In 1989 he was promoted to Inspector, in 1991 he was promoted to Fire Inspector and was subsequently promoted to the rank of Sergeant in January, 2001.

8.     Plaintiff's immediate supervisor at the time of the incident alleged was Captain Fleming.

9.     Plaintiff Lindsey had received extensive training in the area of Fire and Arson Investigation. He was nationally certified as an Explosive Fire and Arson Investigator and had testified as an expert in a number of criminal trials.

2

10. Plaintiff Lindsey became the only member of the Defendant Fire Department to be certified to work, in conjunction with his trained dog, as an Accelerant Detection Canine Team.

11. Certification as an Accelerant Detection Canine Team required substantial training and work on the part of the Plaintiff Lindsey, and a period of training, and more importantly, bonding with his canine partner.

12. Individuals are not certified alone; they are certified as part of team that includes the handler and his dog. No other member of the Defendant Fire Department was trained or certified to work in this field.

13. Plaintiff Lindsey received no written performance evaluations, however, his immediate superior told him that his work was good.

14. On or about February 6th, 2001 the Plaintiff was suddenly, and without warning, removed from his position as a Sergeant in the Fire/Arson Investigation Unit.

15. At approximately the same time Plaintiff Lindsey's police powers were revoked, and his dog confiscated by the Defendant Fire Department.

### AGE DISCRIMINATION AND TITLE VII VIOLATIONS

16. Plaintiff's position of Accelerant Detection Canine Handler was given to a younger employee (under 40 yrs.) with no experience or certification.

17. On or about March 16, 2001, Plaintiff was informed, by Acting Assistant Fire Chief of the Services Bureau, Gary L. Garland, that his removal from his former position was part of an overall "reorganization" of the Fire Prevention Bureau.

18. The position Plaintiff was removed from remained open.

3

19.     The Fire Department filled the position with an individual who was an acting Sergeant, younger than Plaintiff (under 40 yrs.), with no canine experience, no certification in fire prevention and no fire investigation experience.

20.     The dog Plaintiff handled was given to an employee who is younger (under 40 yrs.), who had no canine experience, no arson investigation experience and had been in fire prevention within the department for only a few months

21.      On numerous occasions in 2000 and 2001, Plaintiff Lindsey, and other members of his unit heard their immediate supervisor, Captain Fleming, make remarks to the effect that he wanted to bring in younger members of the Firefighting Division to replace members of the Fire/Arson Investigative Unit.

22.     Plaintiff Lindsey is currently assigned as a Sergeant in the Firefighting Division.

23.     Plaintiff was removed from his position even after Forensic and Scientific Investigations, the organization that certifies Accelerant Detection Teams ("ADT"), notified Defendant Fire Department that it strongly advised against the splitting of a properly certified scent detection team.

24.     As a result of the Fire Department's actions, the certifying company decertified the dog and Plaintiff Lindsey, leaving the District of Columbia without a properly trained Accelerant Detection Team; the only department in the area without such a team.

25.     The certifying company stated that it was concerned that they had not trained or certified any other member of the Fire Department. They stated that an important part of what Plaintiff Lindsey learned at their training facility was proper health maintenance, and proper daily conditioning.  Without this training, it was stated that the canine's performance would degrade rapidly.

4

26.     After the dog was reassigned by the Fire Department to a new handler, the dog's performance dropped dramatically, resulting in the dog being given away as a house pet because he was no good to perform the function it had once been trained to perform.

27.     During the time that Plaintiff worked as part of the Accelerant Detection Team, he received no complaints about his performance or the dog's performance. Actually, there were several letters of commendation as to the team's work, including letters from the United States Attorney's Office.

28.     Plaintiff Lindsey was told that his employer, the D.C. Fire Department felt that it was too burdensome for a supervisory official, a Sergeant, to handle both supervisory duties and Accelerant Detection duties.

29.     Plaintiff was, however, a Sergeant before he was selected by the D.C. Fire Department, trained and certified as a dog handler.

30.     Plaintiff Lindsey advised the D.C. Fire Department that he would give up his rank of Sergeant in order to remain part of the Accelerant Detection Team, so that he could continue to serve the needs of the citizens of the District of Columbia.

31.     Defendant refused to allow Plaintiff to give up his rank, and even recommended punitive measures to teach Plaintiff a lesson for making such a request.

32.     In a memorandum dated January 18, 2001, Battalion Fire Chief James N. Short, recommended denial of Plaintiff 's request to forego his rank and stay apart of the Accelerant Detection Team.

33.     Plaintiff Lindsey was removed from his position, and had his dog confiscated and assigned to another younger employee, based solely upon his age (over 40 yrs.). Plaintiff

5

suffered many adverse employment actions as a direct result of Defendant's discriminatory treatment.

34.    Plaintiff has suffered a great amount of humiliation, embarrassment, mental anguish and pain and suffering as a direct result of Defendant's actions.

35.    Plaintiff has lost a substantial amount or wags as a result of the D.C. Fire Department's decision to remove him from his position and confiscate and reassign his dog to another younger employee.

WHEREFORE, Plaintiff respectfully prays this Honorable Court:

1.    Award compensatory damages in the amount of Five Hundred Thousand Dollars ($500,000.00)with pre and post judgment interest;

2.    Attorney's fees and costs;

3.    Declaratory and injunctive relief concerning the illegal nature of the policies and practices complained of herein; and

4.    Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

DuBOFF & ASSOCIATES, CHARTERED

By:    _____

Donna Williams Rucker, Esquire, #446713
DuBOFF & ASSOCIATES, CHARTERED
8401 Colesville Road, Suite 501
Silver Spring, Maryland  20910
(301) 495-3131

## JURY DEMAND

Plaintiff requests a trial by jury on all issues contained herein.

_____
Donna Williams Rucker, Esquire

6

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **HAROLD LINDSEY** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 02-1592 (RMC)** |
| | ) |
| **DISTRICT OF COLUMBIA,** *et al.* | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM OPINION

      Harold Lindsey used to be the human partner of the dog Taz when they worked as

a certified Accelerant Detection Canine Team in the District of Columbia Fire and EMS

Department ("Fire Department"). Sergeant Lindsey and Taz investigated fires and determined

their origins and causes until January 2001, when the Fire Department transferred Sgt. Lindsey

to the Firefighting Division and sent Taz to work with a new and untrained handler. Taz was

immediately decertified and later became a house pet. Sgt. Lindsey sued the Fire Department

and Fire Chief Adrian Thompson for age discrimination and seeks to be returned to the Fire

Prevention Division and allowed to work with another dog. At the end of discovery, Defendants

have filed a motion for summary judgment, which Sgt. Lindsey opposes.

## I. BACKGROUND FACTS

      Sgt. Lindsey joined the Department as a firefighter in 1979, when he was 25 years

old. Compl. ¶ 7; Lindsey's Driver's License, Ex. A to Defendants' Statement of Material Facts as

to Which There is No Genuine Issue ("Defs.' Facts"); Lindsey's Deposition ("Lindsey Dep.") at 9,

Defs' Facts, Ex. B. He was promoted to Inspector in 1989, Fire Inspector in 1991, and Sergeant

in January 2001.  Compl. ¶ 7.

        When he was an Inspector, Sgt. Lindsey was trained in arson accelerant detection in

Connecticut with the canine Augie and worked with Augie until that dog retired.  Compl. ¶ 11; *see*

Lindsey Dep. at 9; Fleming Deposition ("Fleming Dep.") at 18,  Defs.' Facts,  Ex. C.  Augie would

help to "determine if there [were] any accelerants used at that particular fire."  Lindsey Dep. at 13.

Sgt. Lindsey had to keep Augi fully trained, which meant working with him on training exercises

constantly between fire investigations.  Lindsey Dep. at 14-15.  Sgt. Lindsey became the only

member of the Fire Department to be certified to work, in conjunction with Augie (and then Taz),

as an Accelerant Detection Canine Team.  Compl. ¶ 10.  This certification required a substantial

amount of training and work on the part of both members of the team and the development of a true

bond between them.  Compl. ¶ 11; *see* Pl.'s Opp., Ex. 3 (Forensic Scientific Investigations ("FSI")

Letter, dated Feb. 25, 2001).  Individuals are not certified alone but only as part of a team comprised

of the human handler and the dog. Compl. ¶ 12; Pl.'s Opp., Ex. 3 at 1.

        In 1996, when Sgt. Lindsey was 42 years old, he and Augie attended an

Accelerant Detection Canine Seminar in Front Royal, Virginia.  Defs.' Facts, Ex. J.  In January

1999, when Sgt. Lindsey was approximately 45 years old, he requested and was granted

administrative leave and use of a K-9 vehicle to re-test Augie after Augie failed re-certification

because of injuries.  Defs.' Facts, Ex. F.  Sgt. Lindsey and Augie were re-certified on the second

test.  Defs.' Facts, Ex. G.  Later in that same year, Sgt. Lindsey's immediate supervisor, then-

Lieutenant Richard Fleming, recommended approval of Sgt. Lindsey's request to attend the

Bureau of Alcohol, Tobacco, and Firearms ("ATF") 1999 Accelerant Detection Canine Seminar

in Myrtle Beach, South Carolina.  Defs.' Facts, Ex. K.

-2-

Sgt. Lindsey first took the exam to be promoted to Sergeant in the "late 80s" and again in the "90s." Lindsey Dep. at 17-18. On those occasions, he did not score high enough to be among those eligible to be selected for vacant Sergeant positions. *Id.*

Sgt. Lindsey took the Sergeant's exam for a third time in 1998. His lawyer asserts, without reference to record support, that he "was never informed that as a sergeant he would be unable to perform as a canine handler. [Sgt. Lindsey] never discussed the possibility that he would not be able to remain a dog handler upon his promotion to Sergeant." Pl.'s Opp. at 17. In contrast, Chief Fleming (then Captain Fleming) testified under oath that he met with Sgt. Lindsey in 1998 and discussed the possibility of retaining the canine handler position if he were promoted to Sergeant. *See* Fleming Dep. at 24. Capt. Fleming told Sgt. Lindsey "that ATF didn't want to give [dogs] to people who were in a supervisory capacity." *Id.* The two men talked "about the unfairness of it because there were surrounding jurisdictions who had dogs, ATF dogs, and they were supervisors." *Id.* Sgt. Lindsey took the examination and scored high enough to be promoted to Sergeant in January 2001.

After Augie retired and after his promotion to Sergeant, Capt. Fleming allowed Sgt. Lindsey to continue with his dog-handling duties and sent him to be certified with Taz. Lindsey Dep. at 117; *see also* Fleming Dep. at 109. As a certified accelerant canine handler, Sgt. Lindsey was on call 24 hours a day for the care, training and maintenance of Taz and, as such, was given guaranteed overtime pay to compensate him for the time spent outside normal working hours in completing those duties. *See* Lindsey Dep. at 58-65. In addition, Sgt. Lindsey's duties as a Sergeant included:

1.  Serv[ing] as overall manager of the branch or section to which assigned.

2.  Work[ing] under the general supervision of the Fire Marshal and the Assistant Fire Marshal to carry out the overall fire protection, fire safety and

fire inspection program objectives.

3.   Establish[ing] work details and schedules to carry out fire protection, fire safety and fire inspection objectives.

4.   Ensur[ing] documentation and accounting for inspections conducted by branch or section to which assigned.

5.   Ensur[ing] time and attendance reports are executed accurately and in a timely manner.

Defs.' Facts, Ex. L.

The parties disagree as to how well this arrangement worked.  Defendants assert that Sgt. Lindsey's canine duties reduced his availability to perform the administrative and supervisory duties that accompanied his new position, which resulted  in another officer performing many of those duties.  Proctor Deposition ("Proctor Dep.") at 50, Defs.' Facts, Ex. H, ("Sergeant Lindsey's duties . . . were primarily the canine handler's duties, which in that position he has--he's responsible for other duties that take[] him out of doing the office duties as a supervisor would do, which, in fact, at that time, I was responsible for.").  Capt. Fleming thought that Taz was spending an inordinate amount of time in the K-9 vehicle while Sgt. Lindsey was working in the office instead of the field.  Fleming Dep. at 97 ("[W]hen Lindsey was a Sergeant, the dog spent a lot of time . . . in the vehicle outside . . . and not really being trained.").  As a result, the command staff came to the conclusion that Sgt. Lindsey "could not do both functions, supervise personnel and handle the canine."  Thompson Deposition ("Thompson Dep.") at 62, Defs.' Facts, Ex. D; *see also* Fleming Dep. at 95.

On the other hand, two Assistant United States Attorneys ("AUSAs"), who prosecuted criminal cases with which Sgt. Lindsey was involved, wrote letters during this time expressing great satisfaction with Sgt. Lindsey as a canine handler and sergeant.  Pl.'s Opp., Ex. 10

-4-

(a-b).  In addition, Sgt. Lindsey was never counseled about any problems.  *See* Fleming Dep. at 108-

10.  Chief Fleming admits that he is not a dog trainer and "could not a[ss]ess if spending time in the

car had some effect on Taz's performance."  Pl.'s Opp. at 11.

On or about February 6, 2001, Sgt. Lindsey was removed from his position as a

Sergeant in the Fire/Arson Investigation Unit.  Compl. ¶ 14; Lindsey Dep. at 97.  At approximately

the same time, his police powers were revoked and the Department took Taz.  Compl. ¶ 15; Lindsey

Dep. at 97.  Sgt. Lindsey was told that "it was too burdensome" for "a Sergeant to handle both

supervisory duties and [canine] duties."  Compl. ¶ 28.  Sgt. Lindsey offered "to give up his rank"

in order to remain a canine handler.  Compl. ¶ 30; Lindsey Dep. at 99.  In an endorsement dated

January 18, 2001, Battalion Fire Chief James N. Short recommended denial of Sgt. Lindsey's

request to forego his rank and remain a member of the Accelerant Detection Canine Team.  Compl.

¶ 32; Pl.'s Opp., Ex. 4.  Sgt. Lindsey was transferred from the Fire Prevention Division to the

Firefighting Division.  Lindsey Dep. at 102-04.  At the time, he was approximately 47 years old.

A selection panel within the Department initially identified Officer Gregory

Randolph as the "front runner" for the open canine handler position.  DeSilva Deposition

("DeSilva Dep.") at 38, Defs.' Facts, Ex. I.  Officer Randolph was approximately 42 years old at

the time.  However, Officer Randolph refused to relinquish his family pet, which could have had

a negative impact on Taz, so the Committee selected Sidney DeSilva.[1]  *Id.* at 39.  Officer

DeSilva was less than 40 years old at the time and had no experience working with a trained

canine partner.  *Id.* at 26.  Because the certified team of Sgt. Lindsey and Taz was broken up, FSI

---

[1] That Officer Randolph might once have been the "front runner" for the position is not
entirely clear and is irrelevant in light of the Court's ultimate resolution of this matter.

decertified them both, leaving the District of Columbia without a trained Accelerant Detection

Canine Team.  Compl. ¶24; Lindsey Dep. at 114-115.  Thereafter, it is undisputed that Taz's

performance declined and he was given away as a house pet.  Compl. ¶ 26.

On August 8, 2002, Sgt. Lindsey sued the District of Columbia and Fire Chief Adrian

Thompson, alleging "Age Discrimination and Title VII Violations."  Compl. ¶¶ 15-16.  *See* 29

U.S.C. §§ 621-634 and 42 U.S.C. § 2000(e) *et seq.*  Sgt. Lindsey states that the reference to Title

VII was a clerical error and he is not advancing any claims under Title VII.  Pl.'s Opp. at 16 (

"Plaintiff has not stated a case under Title VII.").  Title VII does not prohibit age discrimination.

*See Goger v. H.K. Porter Co.*, 492 F.2d 13 (3rd Cir. 1974), *overruled in part on other grounds,*

*Holliday v. Ketchum, MacLeod & Grove, Inc.*, 584 F.2d 1221 (3rd Cir. 1978); *Massey v. Kelly, Inc.*,

742 F. Supp. 1156, 1157 (N.D. Ga.1990)("Title 29 U.S.C. Sec. 623, the Age Discrimination in

Employment Act of 1967, not Title VII, is the statute which proscribes age discrimination.").

Therefore, the Title VII claims will be dismissed as conceded.

## II. LEGAL STANDARDS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is

appropriate when the record shows "that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In determining whether  there is a disputed issue of

material fact, the Court must view the underlying facts and draw all reasonable inferences in favor

of the non-moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587

(1986); *Washington Post Co. v. U.S. Dep't of Health and Human Services*, 865 F.2d 320, 325 (D.C.

Cir. 1989).

The Court's threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. Once the moving party shows that there is a lack of evidence to support the opponent's case, the burden shifts to the non-movant to show, through affidavits or otherwise, the existence of a material issue for trial. *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 198 (D.C. 1991); *Raskauskas v. Temple Realty Co.*, 589 A.2d 17, 25-26 (D.C. 1991). Conclusory allegations by the non-movant are insufficient to withstand summary judgment. *See Beard,* 587 A.2d at 198.

## III. ANALYSIS

The only evidence of age discrimination proffered by Sgt. Lindsey is the sole fact that he was replaced by a person younger than 40 years old as canine handler. Without any other indicia of discrimination to counter Defendants' legitimate, non-discriminatory reason for Sgt. Lindsey's change of duties and lateral transfer, the Court finds that Defendants' motion for summary judgment must be granted.

### A. *Prima Facie* Case

ADEA cases use the now-familiar *McDonnell-Douglas* burden-shifting analysis.[2] In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), the Supreme Court set out the framework of proof for employment-related litigation. Under *McDonnell-Douglas*, a plaintiff must first establish a *prima facie* case of discrimination: this means that a plaintiff "must

---

[2] *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Hall v. Giant Food*, 175 F.3d 1074, 1077 (D.C. Cir. 1999); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998); *Carter v. George Washington Univ.*, 180 F. Supp. 2d 97, 103 (D.D.C. 2001).

-7-

demonstrate facts sufficient to create a reasonable inference that age discrimination was 'a determining factor' in the employment decision." *Hayman v. Nat'l Academy of Sciences*, 23 F.3d 535, 537 (D.C. Cir. 1994)(quoting *Cuddy v. Carmen*, 694 F.2d 853, 856-57 (D.C. Cir. 1982)). Such an inference can be raised by showing that the plaintiff (1) is a member of the protected class, *i.e.*, at least 40 years of age; (2) is qualified for the position, (3) suffered an adverse employment action; and (4) was replaced by a person who was sufficiently younger to create the inference of age discrimination. *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). If the plaintiff makes out his *prima facie* case, the burden of production shifts to the defendant to articulate legitimate, nondiscriminatory reasons for the challenged employment decision. *McDonnell-Douglas*, 411 U.S. at 802. If the defendant meets this burden of production, which is not a burden of proof, the plaintiff must then "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-55 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507-08 (1993); *Aka*, 156 F.3d at 1288. The plaintiff must establish both that the reason given by the defendant was false and that discrimination was the likely real reason. However, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148.

In considering an employer's reason for its selection, the D.C. Circuit has instructed:

> Even if a court suspects that a job applicant 'was victimized by [] poor selection procedures' it may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.' *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C. Cir. 1982). Once the employer has articulated a non-discriminatory explanation for its action, . . . the issue

-8-

>is not 'the correctness or desirability of [the] reasons offered
>. . . [but] whether the employer honestly believes in the
>reasons it offers.' *McCoy v. WGN Continental Broad. Co.*,
>957 F.2d 368, 373 (7th Cir. 1992); *see also Pignato v.
>American Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir. 1994)
>("It is not enough for the plaintiff to show that a reason
>given for a job action is not just, or fair, or sensible.  He
>must show that the explanation given is a phony reason.").

*Fischbach v. Dep't. of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996).

In light of these precedents, Defendants argue that Sgt. Lindsey has not made out a *prima facie* case and therefore his complaint must be dismissed.  Citing Captain Fleming's deposition testimony, they argue that Sgt. Lindsey knew that it was unlikely that he would be able to continue as a canine handler and be a Sergeant at the same time.  According to Defendants, losing that position was only a "contemplated and likely result of his promotion to Sergeant" and not an adverse action.  Defs.' Mot. for Summ. J. at 12.  Moreover, Defendants point to a department policy, reflected in the collective bargaining agreement, that there is no Technician (canine handler) above the rank of firefighter.  *Id.* at 13.  Defendants rely on *Brody* for the proposition that a purely lateral transfer – such as Sgt. Lindsey's transfer from the Fire Prevention to the Firefighting Division – "'that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action.'"  *Brody*, 199 F.3d at 457 (citation omitted).

The adversity growing out of the loss of his job with Taz to which Sgt. Lindsey points is the loss of a guaranteed 2 hours each day in overtime pay for the maintenance of the dog.  This amounts to more than 700 hours of overtime pay in each year or more than 1,350 hours of straight-time pay. The Court cannot find that this loss in income was insufficient to establish that Sgt. Lindsey's transfer from his position as a Sergeant with canine duties to a Sergeant with firefighter

duties was an adverse action.[3]  Since it is otherwise acknowledged that Sgt. Lindsey is over 40 years old and in the age-protected class,[4] that he was qualified to be a Sergeant canine handler,[5] and that he was replaced by Officer DeSilva who was under 40 years old, the Court finds that Sgt. Lindsey established a *prima facie* case of age discrimination.

## B. Legitimate, Non-Discriminatory Reasons

The *wisdom* of transferring Sgt. Lindsey away from Taz and depriving the Fire Department of a certified Accelerant Detection Canine Team is not before the Court.  In the absence of discrimination, the Fire Department is entitled to run its operations as it sees fit.  *See Fischbach*, 86 F.3d at 1183.

Defendants assert that they removed Sgt. Lindsey from canine handler duties and transferred him to the Firefighting Division because he could not fully handle the duties of both positions and would benefit from broader experience so that the Fire Department could assign him to more kinds of positions across the city.[6]  Before he was promoted to Sergeant, Sgt. Lindsey spent

---

[3]  Defendants properly note that approval of Sgt. Lindsey's request for a demotion, if approved, would not have resulted in greater earnings.  Defs.' Reply at 3.  However, that point is not the precise issue.  The question is whether Sgt. Lindsey as a Sergeant/Canine Handler enjoyed more income than did Sgt. Lindsey after his forced change in duties and transfer to Sergeant/Firefighter.  The answer to the latter question is clearly yes.

[4]  Sgt. Lindsey is 51 years old.  He was 48 when the complaint in this action was filed.

[5]  The Court notes that the Department identifies the reason for Sgt. Lindsey's transfer as his inability to perform adequately both duties as a Sergeant and a canine handler.  This rationale will be addressed below.  It does not undercut the fact that Sgt. Lindsey was qualified to perform both sets of duties.

[6]  Defendants also argue that Department policy and the collective bargaining agreement precluded a Sergeant from performing technician (dog handling) duties.  While these arguments may be accurate as a matter of fact, they clearly had no impact on Sgt. Lindsey, who acted as a Sergeant/canine handler for a year with the express knowledge and approval of Capt. (now Chief) Fleming; they also were not the reasons given to Sgt. Lindsey for his transfer.

-10-

"basically a hundred percent" of his time "investigating fires." Lindsey Dep. at 14. After he was promoted, fire investigation was no longer his "primary job." *Id.* at 44. "[He] didn't have to investigate fires." *Id.* As a Sergeant, Sgt. Lindsey was responsible for "[p]rovid[ing] administrative and supervisory services to ensure efficient operation of the Fire Prevention Division." Defs.' Facts, Ex. L. Despite the addition of Sergeant duties, Sgt. Lindsey "was pretty much Canine." Proctor Dep. at 18. Sgt. Proctor described the situation when Sgt. Lindsey was trying to juggle two jobs at once:

> Sgt. Lindsey's duties, as I know them, were primarily the canine handler's duties, which in that position he has – he's responsible for other duties that takes [sic] him out of doing the office duties as a supervisor would do, which , in fact, at that time, I was responsible for.

*Id.* at 50.

Sgt. Lindsey challenges the idea that he was not effectively performing both sets of duties because no one told him that there were any concerns, he received letters of commendation from the AUSAs, and he and Taz maintained all certifications throughout the period. He also notes that he was never disciplined in any way. These arguments are not persuasive and cannot overcome the common-sense conclusion that it would be difficult for anyone, no matter how well-trained, to perform two fulltime jobs – one mainly in the field and one mainly in the office – at the same time. When the command staff decided that "it was too burdensome" for Sgt. Lindsey to perform as a Sergeant and a canine handler, Compl. ¶ 28, they were merely drawing a legitimate, nondiscriminatory conclusion, for which there is no evidence of bias related to Sgt. Lindsey's age.

---

Accordingly, the Court will not rely on either the policy or the contract in deciding this case.

Case 1:07-cv-00592-RBW Document 16-3 Filed 02/22/2008 Page 22 of 14

As this lawsuit makes clear, Sgt. Lindsey would rather be a Fire Inspector/Accelerant Detection Canine Team member than a Sergeant. Rather than give up Taz and take a new job in the Firefighting Division, he offered to be demoted from Sergeant. The Battalion Chief refused to demote him. Sgt. Lindsey argues that this refusal is demonstrative of age discrimination because (i) there were numerous other applicants for Sergeant and (ii) it left the Fire Department without an Accelerant Detection Canine Team because no one else was properly trained. These arguments attack the wisdom of the Fire Department's choice which, without some indication of age discrimination, is not so extreme as to demonstrate bias. Having determined through experience and testing that Sgt. Lindsey had the capability to be a Sergeant in the Fire Department, it was not incumbent upon the Fire Department to forego his experience and skills and reduce him to a lesser position. A refusal to demote is not an adverse action. *Wynn v. Paragon Systems, Inc.*, 301 F. Supp. 2d 1343, 1352 (S.D. Ga. 2004).

Fire Chief Thompson explained the reasoning behind the transfer of Sgt. Lindsey:

> Well, Sergeant Lindsey had spent pretty much all of his career in the Fire Investigation Unit and the Fire Prevention Division itself. In terms of Sergeant, he had no field experience in suppression operations, tactical operations, suppression or incident mitigation at all. As a Sergeant, he could be sent anywhere in the city to perform that function. If he didn't have the skills in it, somebody is going to get hurt.

Thompson Dep. at 58-59. In other words, once the command structure decided that Sgt. Lindsey was unable to perform fully both the duties of a Sergeant and the duties of a canine handler at the same time, it also decided to broaden his experience so that he could be assigned as a Sergeant anywhere in the city. Nothing in Defendants' explanations or the arguments of Sgt. Lindsey even hint that his age impacted these decisions.

-12-

## C. Pretext

Having determined that Defendants have presented a legitimate, non-discriminatory reason for removing Sgt. Lindsey from canine duty and transferring him, the remaining issue is whether Sgt. Lindsey has put forth "sufficient evidence to find that the employer's asserted justification is false . . . ." *Reeves,* 530 U.S. at 148. This he has not done.

Sgt. Lindsey wants to be a canine handler in the Fire Prevention Division. He argues that removing him from this duty, refusing his request to be demoted, and depriving the District of Columbia of a certified Accelerant Detection Canine Unit, while replacing him with a younger, untrained officer, was so clearly unreasonable as to demonstrate discrimination based on his age. *See* Pl.'s Opp. at 14 ("Plaintiff was serving a need in the Unit as Canine Handler and as a supervisor. Moreover, plaintiff had the only certified Accelerant Detection Canine team in the District of Columbia, and he had police powers. Plaintiff was arbitrarily removed due to his age, and replaced by a younger Canine Handler."). Further, he argues:

> The defendants' refusal to accept plaintiff's surrender of rank as Sergeant, and their transfer of plaintiff to fire suppression, left the city without an Accelerant Detection Canine Team. Plaintiff's removal from the Canine Team left the city vulnerable, they were forced to rely on the surrounding jurisdictions if they had a fire scene that needed to be worked by an accelerant detecting canine. Given the circumstances, defendants' assertion that plaintiff was reassigned for the benefit of the Fire Department is without merit, and strains logic and common sense.

*Id.* at 15. However sound or questionable the decision might have been, these arguments go to the correctness of the decision to relieve Sgt. Lindsey from canine handling and reassign him to supervising firefighters. Nothing connects that decision to his age. The single piece of evidence that age played a part in this decision process is that Officer DeSilva, a man younger than 40 years old, was assigned the position of canine handler despite his lack of training and experience. This

evidence contributed to Sgt. Lindsey's *prima facie* case but does nothing to counter Defendants' legitimate, nondiscriminatory explanation for their actions. Accordingly, Sgt. Lindsey's complaint must be dismissed.[7]

## V. CONCLUSION

The Court does not sit as a "super-personnel department that reexamines an entity's business decisions." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986). The Court must therefore decline Sgt. Lindsey's request that it decide whether it was wise for the D.C. Fire Department to relieve him of duties as a canine handler and maintain his position as a Sergeant in the Firefighting Division. Because there is no evidence to counter Defendants' legitimate, nondiscriminatory reasons for their actions, Defendants' motion for summary judgment will be granted and Sgt. Lindsey's complaint will be dismissed. A memorializing order accompanies this memorandum opinion.[8]

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: February 3, 2005.

-------------------------

[7] The Court agrees with Defendants that the ADEA does not provide for individual liability and, for this reason as well, the allegations against Chief Thompson must be dismissed. *See EEOC v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276, 1279-80 (7th Cir. 1995); *accord Smith v. Lomax*, 45 F.3d 402, 403 n. 4 (11th Cir. 1995); *Miller v. Maxwell's Int'l., Inc.*, 991 F.2d 583, 587 (9th Cir. 1993), *cert denied*, 510 U.S. 1109 (1994); *Stuts v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). In addition, Sgt. Lindsey's claims for compensatory damages must be dismissed for the alternative reason that such damages are not available under the ADEA. 29 U.S.C. § 626(b) (1967); *see Prouty v. Nat'l R.R. Passenger Corp.*, 572 F. Supp. 200, 208 (D.D.C. 1983).

[8] In light of this decision, all pending motions will be denied.

-14-