# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                                        )
HAROLD C. LINDSEY,                      )
                                        )
            Plaintiff,                  )
                                        )
       v.                               )          Civil Action No. 07-1939 (RBW)
                                        )
DISTRICT OF COLUMBIA,                   )
                                        )
            Defendant.                  )
_____)
```

## MEMORANDUM OPINION

Harold C. Lindsey, the plaintiff in this civil lawsuit, brings this action against the District

of Columbia alleging (1) age discrimination based on the circumstances surrounding his

"remov[al] from his position as [an] Accelerant Detection Canine Handler" and the

"appoint[ment] of Sergeant Proctor to the position . . . [,who u]pon information and belief . . . is

under the age of 40," Complaint ("Compl.") ¶¶ 38, 46-47, (2) breach of "a duty of care to abide

by the rules, regulations, procedures and laws then in effect within the District of Columbia Fire

and [Emergency Medical Systems] Department and in the District of Columbia," id. ¶ 66, and (3)

intentional infliction of emotional distress causing "humiliation, embarrassment, mental

anguish[,] and pain and suffering," id. ¶ 70.  Currently before the Court is the defendant's motion

for summary judgment under Federal Rule of Civil Procedure 56.  Upon consideration of the

plaintiff's Complaint, the defendant's summary judgment motion, and all relevant memoranda

and exhibits attached thereto,[1] the Court concludes for the following reasons that it must grant in part and deny in part the defendant's motion for summary judgment.

## I.      Background

The plaintiff joined "the District of Columbia Fire and Emergency Medical Services ("DCFEMS") on or around November 1979 as a firefighter."  Pl.'s Opp'n, Exhibit ("Ex.") 2 (The District of Columbia's Responses to Plaintiff's First Set of Requests for Admission ("Def.'s Resp. to Pl.'s Req. for Adm.")) ¶ 1.  The plaintiff received several promotions during his tenure at the DCFEMS; in 1989, the plaintiff was elevated to the rank of Inspector, and then he was promoted to the rank of Fire Inspector in 1991,[2] before finally being promoted to the rank of Sergeant in January 2000.  Id. at ¶¶ 2, 6; see Pl.'s Opp'n at 3.  In addition to his other duties as a Sergeant, prior to February 2001 the plaintiff also served as an Accelerant Detection Canine Handler ("Canine Handler").  Def.'s Resp. to Pl.'s Req. for Adm. ¶ 5; Pl.'s Opp'n at 14, 17.  In this additional position, the plaintiff's responsibilities included "the [i]nvestigation of fires to determine the cause and origin" through the use and assistance of a canine.  Pl.'s Opp'n, Ex. 14 (Memorandum of Duties of a Canine Handler) at 2.

The "[p]laintiff was trained as [a]n arson accelerant detect[or] with [a] canine [named] Augie" in 1996.  Pl.'s Opp'n at 3.  When Augie retired, the plaintiff was then "certified to work with [a c]anine [named] Taz[,] since individuals are not certified alone but as a team comprised of a human handler and a trained canine."  Id.; see Pl.'s Opp'n, Ex. 11 (Forensic & Scientific

---

[1] In addition to the Complaint and the District of Columbia's Motion for Summary Judgment, the Court also considered the following submissions in resolving the defendant's motion: (1) the defendant's Memorandum of Supporting Points & Authorities ("Def.'s Mem."); (2) the plaintiff's Memorandum of Points and Authorities in Suuport of Plaintiff's Opposition to the District of Columbia's Motion for Summary Judgment ("Pl.'s Opp'n"); and (3) the defendant's Reply to Plaintiff's Opposition to the Motion for Summary Judgment ("Def.'s Reply).

[2] Although the defendant does not dispute that the plaintiff attained the rank of Fire Inspector, the defendant does dispute the timing of the promotion.  Pl.'s Opp'n at 3; Def.'s Resp. to Pl.'s Req. for Adm. ¶ 3.

Investigations February 25, 2001 Letter ("Forensics Letter")) at 1.  As a Canine Handler, the plaintiff "receive[d] compensation," in addition to his base salary, "of a minimum of two hours of overtime a day for taking care of the canine."  The District of Columbia's Response to Plaintiff's Statement of Material Facts in Dispute ("Def.'s Resp. to Pl.'s Stmt.") ¶ 10.  "Because he was on call twenty-four hours a day, he was also guaranteed overtime for any hours spent outside of normal working hours completing duties related to operating and training a canine."  Pl.'s Opp'n at 4; see Pl.'s Opp'n, Ex. 5 (Deposition of Sergeant Phillip Proctor ("Proctor Deposition")) at 16:3-11, 17:13-22.

In 2001, the plaintiff was removed from the Canine Handler position, although he still maintained his position as a DCFEMS Sergeant.  Pl.'s Opp'n at 4.  While the plaintiff and the defendant disagree as to the timing of his removal, Def.'s Resp. to Pl.'s Req. for Adm. ¶ 5; Pl.'s Opp'n at 4; Plaintiff's Statement of Material Facts in Dispute ("Pl.'s Stmt.") ¶ 30; Lindsey v. District of Columbia, Civil Action No. 02-1592 (RMC), slip op. at 5 (D.D.C. Feb. 3, 2005), it appears from the February 25, 2001 letter to Chief Ronnie Few from David Latimer of Forensic & Scientific Investigations that the plaintiff's removal occurred in early 2001.  See Pl.'s Opp'n, Ex. 11 (Forensics Letter) at 1 ("[W]e recently contacted Sgt. Harold Lindsey to monitor job performance with his new . . . Canine, 'Taz'. . . . During the conversation, Sgt. Lindsey . . . related some very distressing news; he said that Taz had been taken from him.").  According to the plaintiff, he "was informed that he was being removed from [the Canine Handler] position because a DCFEMS officer (i.e., a Sergeant, Captain, or Lieutenant) could not be allowed to operate as a [Canine H]andler," due to the burden of performing both positions.  Pl.'s Opp'n at 4.  However, Richard Fleming, who at all relevant times in this case was a Deputy Chief Fire Marshall in the DCFEMS, indicated the plaintiff's removal from his Canine Handler position

"had to do with the organization's structure and union regulations [regarding] who could be a [Canine H]andler, or a technician, and who couldn't."  Pl.'s Opp'n, Ex. 3 (Deposition of Richard Fleming) at 23:6-12.   During his tenure as a Canine Handler, the "[p]laintiff was the only member of the [DCFEMS] to be certified to work as an Accelerant Detection Canine Handler." Def.'s Resp. to Pl.'s Req. for Adm. ¶ 7.  Upon receiving notice of his removal from the Canine Handler position, the plaintiff indicated "he was willing to give up his rank of Sergeant in order to remain part of the Accelerant Detection Team;" however, the "[d]efendant did not allow [the p]laintiff to" do so.  Def.'s Resp. to Pl.'s Req. for Adm. ¶¶ 24, 25.

At the time of his removal as a Canine Handler, the "[p]laintiff was over 40 years of age." Id. at ¶ 9; Def.'s Resp. to Pl.'s Stmt. ¶ 1.  Following the plaintiff's removal, "the next person to serve as . . . [a] Canine . . . Handler for DC was Sydney DeSilva," Def.'s Resp. to Pl.'s Req. for Adm. ¶ 12, who was under 40 years of age, id. at ¶ 16.

In August 2002, the plaintiff sued the District of Columbia and Fire Chief Adrian Thompson for age discrimination under the Age Discrimination in Employment Act ("ADEA"), seeking "to be returned to the Fire Prevention Division and allowed to work with another dog." Lindsey, slip op. at 7.  Specifically, the plaintiff argued that the defendant discriminated against him by replacing him with "a person younger than 40 years old as a [C]anine [H]andler."  Id. Relying on the Supreme Court's decision in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), Judge Collyer found that the plaintiff had established a prima facie case of age discrimination because he was "over 40 years old and in the age-protected class, he was qualified to be a Sergeant [C]anine[ H]andler, and he was replaced by [DeSilva] who was under 40 years old."  Lindsey, slip op. at 10.  The Court then found, however, that the defendant had a legitimate, nondiscriminatory reason for its action when it decided that it was too burdensome

4

Case 1:07-cv-01939-RBW   Document 50   Filed 09/14/11   Page 5 of 23

for the plaintiff to work simultaneously as a sergeant and a Canine Handler, id. at 10-12, and

because the plaintiff failed to present sufficient evidence to demonstrate that the defendant's

legitimate, nondiscriminatory justification was a pretext designed to conceal its discriminatory

actions, the Court granted the defendant's motion for summary judgment in February 2005, id. at

13-14.  In her opinion in that case, Judge Collyer noted that despite the Department's explanation

that it was too burdensome for the plaintiff "to adequately perform both duties as a Sergeant and

a canine handler . . . does not undercut the fact that Sgt. Lindsey was qualified to perform both

sets of duties."  Lindsey, slip op. at 10, n.5.

    In late 2005, the "District took disciplinary action against [DeSilva], and eventually

removed him from the [C]anine [H]andler position."  Def.'s Mem. at 20, ¶ 2.[3]  At the onset of

DeSilva's disciplinary action, the plaintiff notes that "Sergeant Proctor operated as the [canine]

handler for the Department while simultaneously maintaining his duties as Sergeant."  Pl.'s Stmt.

¶ 13.  The defendant does not dispute this fact, but further explains that

> Sergeant Proctor never applied for, and was never granted, the [C]anine [H]andler
> position.  Instead – because he directly supervised a [C]anine [H]andler who,
> beginning in late-2005, was being disciplined for performance deficiencies that
> eventually led to his removal – Sergeant Proctor was temporarily tasked with
> responsibility for handling the canine until these disciplinary proceedings were
> completed, and the position itself became vacant.

Def.'s Resp. to Pl.'s Stmt. ¶ 13.  The defendant contends that because DeSilva "grieved his

removal[,] the district was unable to fill the position or otherwise make any selections until the

grievance process reached completion."  Def.'s Mem. at 20, ¶ 3.  The defendant further indicates

that "under exigent circumstances designed to address the canine's welfare, Chief Richard

Fleming instructed Sergeant Proctor, who had the requisite training, to fulfill the duties of the

---

[3] The page numbers the Court references in the Defendant's Memorandum in Support of its Summary Judgment
Motion are the page numbers assigned by the Court's filing system, as the defendant's Memorandum itself is not
numbered.

position on a temporary basis." Id. at ¶ 4.  Moreover, the defendant notes that it "did not

advertise the position of [Canine H]andler before placing Sergeant Proctor in the position,"

Def.'s Resp. to Pl.'s Stmt. ¶ 5, but contends this fact is immaterial because "Sergeant Proctor did

not serve in the position of Accelerant Detection Canine Handler," Def.'s Resp. to Pl.'s Req. for

Adm. ¶ 29.

Conversely, the plaintiff believes that Sergeant Proctor's appointment to the Canine

Handler position "was never intended to be temporary [because] Sergeant Proctor operated as the

[Canine H]andler and performed all of the duties and functions of a [Canine H]andler while

performing the duties required of him in his rank [of] Sergeant for a minimum of one year."

Plaintiff's Responses to Defendant's Statement of Uncontested Material Facts ("Pl.'s Resp.") ¶

4.  The plaintiff further contends that although the "defendant had a policy that a sergeant could

not operate as a [Canine H]andler[, it] does not proffer a single policy or procedure in place

within the DCFEMS that would prevent [him] from filling a vacancy while a grievance is

pending."  Pl.'s Resp. ¶ 3.  And as further proof of his age discrimination claim, the plaintiff

points out that when Sergeant Proctor assumed DeSilva's duties as a Canine Handler, he was

also under forty years of age.  See Pl.'s Opp'n, Ex. 5 (Proctor Deposition) at 6:21-22, 7:1

(Sergeant Proctor was born on June 12, 1966).  The plaintiff contends that this fact is significant

because "Chief Fleming and other DCFEMS officers regularly made remarks that the department

wanted a younger workforce."  Pl.'s Stmt. ¶ 7.  In support of this assertion, the plaintiff cites a

Memorandum from Chief Fleming dated December 3, 1998, which states "for the future I

recommend selecting investigators and first line supervisors at an earlier stage of their careers. . .

. Younger members will provide a greater return for the amount of time and money committed to

their development."  Pl.'s Opp'n, Ex. 15 (Memorandum from Chief Fleming) at 1.

On May 3, 2006, "the Department sent out a Memorandum for 'Members of Interest in the Position of Accelerant Canine Handler.'" Pl.'s Opp'n at 6; <u>see</u> Pl.'s Opp'n, Ex. 7 (May 3, 2006 Memorandum) at 1. While "the Memorandum listed a dozen very detailed qualifications and duties[,] . . . none [of them] indicated that an officer was not able [to] qualif[y] for the position," Pl.'s Opp'n at 6; <u>see</u> Pl.'s Opp'n, Ex. 7 (May 3, 2006 Memorandum) at 1-2, but the plaintiff was informed prior to and after the issuance of the May 3, 2006 Announcement that he was not able to apply because he was a Sergeant, Def.'s Resp. to Pl.'s Stmt. ¶ 12. On June 12, 2006, the plaintiff "filed a complaint for age discrimination with the [United States] Equal Employment Opportunity Commission ('EEOC') and the District of Columbia Office of Human Rights ('OHR')," alleging that he had been deemed ineligible to apply for the May 3, 2006 vacancy "because he held the rank of Sergeant[,] but [that] at the time of the Memorandum a much younger Sergeant Proctor was operating as a [Canine] Handler." Pl.'s Opp'n at 6. Specifically, the plaintiff stated in the typewritten portion of his EEOC charge that

> in May 2006, I was not afforded the opportunity to apply for a Sergeant position as a [Canine] Handler. . . . The person selected for this position has less than a year experience and is younger than me. In addition, employees selected for [Canine] Handler positions have been under the age of 40.

Def.'s Mem., Ex. C (EEOC Charge) at 1. In the questionnaire section of his EEOC charge, the plaintiff wrote that "the [F]ire [Department] sent a Sergeant to receive full training in becoming the [C]anine [H]andler and gave him the position without opening up the position to anyone in the department." <u>Id.</u> at 2.

In December 2006, "the Department issued a Vacancy Announcement for a 'Fire/Arson Investigator, Armed/Canine Handler,'" which indicated "[m]embers of the Department below the rank of Sergeant, with (5) years accredited service with DCFEMS" were eligible to apply. Pl.'s

Opp'n at 6; Pl.'s Opp'n, Ex. 8 (December 1, 2006 Vacancy Announcement) at 1.  Subsequent to

the issuance of this announcement, Scott Wilson was assigned to the Canine Handler position.

See Def.'s Resp. to Pl.'s Req. for Adm. ¶ 18.  At the time of Wilson's assignment to the Canine

Handler position, he also "was under 40 years of age."  Id.  Additionally, although the exact

dates are unclear, at some point in time another Sergeant also served as a Canine Handler after

the plaintiff's removal.  Pl.'s Opp'n, Ex. 5 (Proctor Deposition) at 102:22-103:1-10.  The

plaintiff did not file a new EEOC charge based on the December 2006 vacancy posting, and he

did not amend the EEOC administrative complaint that he filed in June 2006 to include any

allegations of discrimination related to the December 2006 vacancy; the plaintiff asserts that the

EEOC complaint he filed "in June 2006" was based solely "on the department's May 2006

Memorandum and a Sergeant operating as a [Canine H]andler."  Pl.'s Resp. ¶ 8.

        In response to his EEOC charge, the plaintiff received notice of his right to sue sometime

around August 2007.  Pl.'s Opp'n, Ex. 13 (EEOC Notice of Right to Sue) at 3.  The plaintiff then

filed his Complaint in this case on October 26, 2007.  In his Complaint, the plaintiff asserts

claims against the defendant of age discrimination, Compl. ¶¶ 37-64, negligence, id. ¶¶ 65-68,

and intentional infliction of emotional distress, id. ¶¶ 69-77.  In support of his age discrimination

claim, the plaintiff asserts that he "was removed from his position [as a Canine Handler] and had

his dog confiscated and assigned to another younger employee, based solely upon his age (over

40 [years])."  Id. ¶ 60.  In support of his negligence claim, the plaintiff asserts that the

"[d]efendant owed [him] a duty of care to abide by the rules, regulations, procedures and laws

then in effect within the District of Columbia Fire and [Emergency Medical Systems]

Department and in the District of Columbia," id. ¶ 66, and that the defendant breached that duty,

id. ¶ 67.  Finally, in support of his intentional infliction of emotional distress claim, the plaintiff

asserts that he "has . . . suffer[ed] emotional anguish[] and psychological distress" as a result of being removed from his position as a Canine Handler, being replaced by a younger individual, and being prevented "from applying for the position of [Canine] Handler when the vacancy announcement was posted." Id. ¶ 73.

The defendant moved for judgment on the pleadings on July 23, 2008. In support of its motion, the defendant argued that the plaintiff's claims were barred by the doctrine of res judicata because the plaintiff "again alleges that the [defendant] improperly removed him from his position as the Accelerant Detection Canine Handler and engaged in [a]ge [d]iscrimination," Def.'s Mem. at 5, and "[a]gain, [the p]laintiff bases his claim on the lone fact that the person who replaced him as the [h]andler was under the age of 40," id. The defendant asserted that Judge Collyer's earlier memorandum opinion in Lindsey completely barred the plaintiff from pursuing his current claims. Id. at 8. After considering the arguments raised by the parties, the Court granted in part and denied in part the defendant's motion, concluding in its April 9, 2009 Memorandum Opinion that the "plaintiff's claims arising from his removal as [a] . . . Canine . . . Handler are precluded under the doctrine of res judicata, but that the same claims are not barred by Judge Collyer's decision insofar as they arise from the selection of Sergeant Proctor for the position of . . . Canine . . . Handler in late 2005." Lindsey v. District of Columbia, 609 F. Supp. 2d 71, 77 (D.D.C. 2009).

On October 18, 2010, the defendant moved for summary judgment under Federal Rule of Civil Procedure 56, arguing that the "[p]laintiff cannot establish a prima facie case of age discrimination . . . negligence . . . [or] intentional infliction of emotional distress." Def.'s Mem. at 1. More specifically, the defendant contends that the plaintiff "cannot establish a prima facie case of negligence" due to the plaintiff's failure to introduce expert testimony on the appropriate

standard of care applicable to this case.  Id. at 14-15.  While "expert testimony on the appropriate

standard of care is not required in every case where negligence is claimed," the defendant claims

that "it is required where 'the subject in question is so distinctly related to some science,

profession or occupation as to be beyond the ken of the average layperson." Id. at 15 (quoting

Butera v. District of Columbia, 235 F.3d 637, 659 (D.C. Cir. 2001)).  The defendant posits that

> the manner in which the District was purportedly required, but failed, to comply
> with unspecified 'rules, regulations, procedures and laws then in effect within the
> District of Columbia Fire and Emergency Medical [Services] Department and in
> the District of Columbia' is not one within the realm of the everyday experiences
> of a lay person and is distinctly related to the firefighting profession.

Id.  Furthermore the defendant argues that the plaintiff's claims are procedurally barred because

the plaintiff failed to administratively exhaust his age-discrimination claim as it relates to the

December 2006 Vacancy Announcement and subsequent hires, and that he failed to satisfy the

mandatory notice requirements for bringing his negligence and intentional infliction of emotional

distress claims as prescribed by Section 12-309 of the District of Columbia Code.  Id.  The

defendant also asserts that the plaintiff cannot recover punitive damages against the District of

Columbia or recover punitive or compensatory damages under the ADEA.  Id.

In his opposition memorandum, the plaintiff voluntarily dismisses his intentional

infliction of emotional distress claim and withdraws his request for punitive damages.  Pl.'s

Opp'n at 23.  With regard to his age discrimination claim, however, the plaintiff argues that the

defendant has failed to "articulate[ ]or provide[] any evidence that [the p]laintiff is not a member

of a protected group, was not qualified to operate as a [Canine] [H]andler, or that [the d]efendant

did not subject [the p]laintiff to an adverse employment action or that there are no circumstances

to support an inference of discrimination." Id. at 13.  Additionally, the plaintiff argues that the

defendant has not met "its burden of proof [as to] its affirmative defense of failure to exhaust"

administrative remedies, id. at 8, and that the nondiscriminatory reason offered by the defendant is a pretext for discrimination, id. at 15-20.  In response to the defendant's argument that expert testimony is necessary to establish his prima facie case of negligence, the plaintiff argues that such testimony is not necessary because the "[p]laintiff brings his negligence claim for [the d]efendant's failure to provide a work environment free of discrimination in violation of federal anti-discrimination laws, not for violations of DCFEMS policies and procedures," id. at 21, and "[w]here negligent conduct is alleged in a context [that] is within the realm of common knowledge and everyday experience, the plaintiff is not required to adduce expert testimony either to establish the applicable standard of care or to prove that the defendant failed to adhere to it," id. at 21-22 (quoting District of Columbia v. Hampton, 666 A.2d 30, 36 (D.C. 1995)).

## II.   Standard of Review

To grant the defendant's motion for summary judgment under Federal Rule of Civil Procedure 56, the Court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson  Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citations omitted).  The defendant has the burden of demonstrating the absence of a genuine issue of material fact, and that the plaintiff "fail[ed] to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Accordingly, the plaintiff cannot rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 248 (internal quotation and citation omitted) (second omission in original).  Thus, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-50 (citations omitted).

## III.    Legal Analysis

As noted above, the plaintiff is no longer pursuing his claim of intentional infliction of emotional distress.  Moreover, as a result of this Court's April 22, 2009 Memorandum Opinion, the plaintiff cannot pursue any of his claims insofar as they relate to the hiring of DeSilva in 2001 to replace the plaintiff as a Canine Handler.  Accordingly, the issues remaining for the Court to resolve are the following: (1) whether the plaintiff is barred from bringing his ADEA claim due to his failure to exhaust his administrative remedies by failing to file an EEOC charge in connection with the December 2006 vacancy posting; (2) assuming that the plaintiff exhausted his administrative remedies, whether the facts in the record, when viewed in the light most favorable to the plaintiff, are sufficient to set forth a claim of age discrimination under the ADEA; (3) assuming that the plaintiff can proceed with his ADEA claim, whether the plaintiff can recover compensatory damages under the ADEA; (4) whether the plaintiff provided sufficient notice of his negligence claim to the Mayor of the District of Columbia pursuant to District of Columbia Official Code § 12-309; and (5) assuming that the plaintiff provided sufficient notice to the Mayor, whether the defendant is entitled to summary judgment due to the plaintiff's failure to present expert testimony to establish a prima facie case of negligence.  The Court will address each issue in turn.

**A.      Administrative Exhaustion of the Plaintiff's ADEA Claims**

The defendant argues that the plaintiff cannot proceed on any claim related to the

December 1, 2006 Canine Handler vacancy announcement because the plaintiff failed to exhaust

his administrative remedies in regards to his ADEA claim.  It is the defendant's position that this

result is required because the ADEA exhaustion requirements "command[] a plaintiff to first file

an administrative charge with the EEOC and exhaust all remedies with respect to that charge []

before bringing a civil lawsuit."  Def's. Mem. at 10.

It is not disputed that the plaintiff filed an administrative charge with the EEOC on June

12, 2006, and that the EEOC charge did not include any allegations of discrimination related to

the vacancy posting that was announced in December 2006; rather, the allegations were limited

to the circumstances surrounding "the [DCFEMS's] May 2006 Memorandum" and Sergeant

Proctor's selection as Canine Handler position in late 2005.  Pl.'s Opp'n at 11.  And while the

defendant is correct that the plaintiff is required to exhaust all administrative remedies for each

discrete action of alleged discrimination, see Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.

101, 108 (2002) ("[S]trict adherence to the procedural requirements specified by the legislature is

the best guarantee of even-handed administration of the law."); id. at 113 ("[D]iscrete

discriminatory acts are not actionable if time barred, even when they are related to acts alleged in

a timely filed charge.  Each discrete discriminatory act starts a new clock for filing charges

alleging that act."); Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 137 (D.D.C. 2004)

(Friedman, J.), here, the plaintiff is not seeking to bring a second age discrimination claim based

on the December 2006 vacancy posting.  As the plaintiff indicates, he is only relying on the 2006

vacancy posting to the extent that it "support[s] . . . [the p]laintiff's pretext argument," Pl.'s

Opp'n at 12, regarding the May 3, 2006 Memorandum seeking "Members Interested in the

Position of Accelerant Canine Handler," Id., Ex. 7 (May 3, 2006 Memorandum) at 1.  Given that

the plaintiff is bringing a claim of discrimination based solely on the May 2006 vacancy

announcement, the defendant's exhaustion argument is without merit.

**B.      The Plaintiff's Age Discrimination Claim**

"[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by

a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse

employment action."  Gross v. FBL Fin. Servs., __ U.S. __, __, 129 S. Ct. 2343, 2352 (2009).

This Circuit applies the burden-shifting framework set out in McDonnell Douglas Corp. v.

Green, 411 U.S. 792 (1973) to cases brought under the ADEA.  See Chappell-Johnson v. Powell,

440 F.3d 484, 487 (D.C. Cir. 2006); Paquin v. Federal Nat'l Mortg. Ass'n, 119 F.3d 23, 26 (D.C.

Cir. 1997).  The first step in the McDonnell-Douglas test is to determine whether the plaintiff has

established a prima facie case of discrimination.  411 U.S. at 802.  To satisfy this prong of the

test, the plaintiff must show that he is (1) a member of the protected class, i.e., at least 40 years

of age; (2) qualified for the position, (3) suffered an adverse employment action; and (4) was

replaced by a person who was sufficiently younger to create the inference of age discrimination.

Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999).  Once this first prong is met, the burden of

production shifts to the defendant to identify a legitimate, nondiscriminatory reason for the

challenged employment action.  McDonnell-Douglas, 411 U.S. at 802.  If the defendant meets

this burden of production, the plaintiff must "prove by a preponderance of the evidence that the

legitimate reasons offered by the defendant were not its true reasons, but were a pretext for

discrimination."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-55 (1981).

However, "[i]t is not enough for the plaintiff to show that a reason given for a job action is not

just, or fair, or sensible.  He must show that the explanation given is a phony reason."  Fischbach

v. Dep't. of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting Pignato v. Am. Trans Air, Inc., 14 F.3d 342, 349 (7th Cir.1994)).

At the summary judgment stage, however, the plaintiff's ability to establish a prima facie case is of little concern to the Court.  As the District of Columbia Circuit held in Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008),[4] "where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non- discriminatory reason for the decision, the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas."  Thus, where an employer moves for summary judgment (as is the case here), the Court is confronted with "one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason" for the adverse employment action, and that the real reason for the employer's action was to "intentionally discriminate[] against the employee on the basis of [age]."  Id.

Here, although the defendant claims to have provided the Court with "nearly five . . . full pages of uncontested evidence [that] conclusively establishes that the [plaintiff's] ADEA claim . . . must be dismissed for . . . want of a prima facie case," Def.'s Reply at 3, the Court finds nothing in either the defendant's memorandum in support of its motion or its reply brief where it disputes that the plaintiff suffered an adverse employment action.  Furthermore, it is undisputed that the defendant's proffered reasons for not appointing the plaintiff to the Canine Handler position in 2005—specifically, the need to place Sergeant Proctor in the position to protect the welfare of the canine—constitutes a legitimate, nondiscriminatory reason under the McDonnell

---

[4] Although Brady considered the McDonnell Douglas test in the context of a claim brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, the logic of Brady applies in the ADEA context as well.  See Jones v. Bernanke, 557 F.3d 670, 678 (D.C. Cir. 2009) (applying Brady framework to retaliation claim under ADEA).

Douglas test.  Thus, under the Circuit's precedents as noted above, the Court must now

determine whether the plaintiff has put forth sufficient evidence for a reasonable jury to conclude

that the defendant's proffered reason is false and that discrimination was the real reason for the

failure to designate him for the assignment.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515

(1993).  In other words, "the plaintiff must show that a reasonable jury could conclude from all

of the evidence that the adverse employment decision was made for a discriminatory reason."

Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003).

On the record before it, the Court finds that the plaintiff has made a sufficient showing to

survive summary judgment.  The plaintiff identifies several occurrences in which Chief Fleming

made statements regarding his desire to have a younger workforce, including a memorandum

written by Chief Fleming on December 3, 1998, in which he recommended that the Fire

Department "select investigators and first line supervisors at an earlier stage of their careers

[because y]ounger members will provide a greater return."  Pl.'s Opp'n, Ex. 15 (Memorandum

from Chief Fleming) at 1.  Moreover, in his deposition, the plaintiff indicated that "Chief

Fleming had stated numerous times (to the plaintiff) that he wanted younger people in the unit."

Pl's Opp'n, Ex. 4 (Declaration of Harold C. Lindsey) at 52:18-22.  He further testified that Chief

Fleming "said . . . that to the investigation unit numerous times," id. at 53:2-4, and that "[i]t

wasn't a general statement.  This was his idea and philosophy of the unit," id. at 53:15-16.  When

asked if he heard anybody else make comments that "they wanted younger people in the

positions," the plaintiff answered "not that I can recall," but indicated he had heard Chief

Fleming make such comments while the plaintiff was in the Canine Handler position and other

positions.  Id. at 63:10-22, 64:1-5.  When asked if anyone else was present when Chief Fleming

make these comments, the plaintiff listed "Investigator Hollis, John Curry . . . Joseph Mitchell,

16

Wesley Hamilton, [and Alan] Lancaster." <u>Id.</u> at 64:6-17.  Drawing all reasonable inferences in

favor of the plaintiff, as it must at this stage of the proceedings, <u>Reeves</u>, 530 U.S. at 150, the

Court finds that Chief Fleming's alleged statements could be construed by a reasonable juror to

substantiate his desire to have a younger workforce, which in turn supports the inference that in

choosing Sergeant Proctor for the position and not making the opportunity available to possible

applicants, Chief Fleming was intentionally discriminating against the plaintiff.  This is

especially true when Chief Fleming's statements are viewed in light of the undisputed evidence

that since the plaintiff was removed from his Canine Handler position in 2001, "the Department

has not hired a [Canine H]andler over the age of 40."  Pl.'s Opp'n at 18.  Thus, a reasonable juror

could find the plaintiff's evidence sufficient to rebut the defendant's proffered explanation for

Sergeant Proctor's appointment to the Canine Handler position in 2005, as well as the failure to

make the position available to anyone else in May 2006.

### C.    Damages Available Under the ADEA

The plaintiff has voluntarily dismissed his request for punitive damages, but he still

requests a variety of other monetary relief, including compensatory damages.  The defendant

argues, however, that compensatory damages are unavailable under the ADEA.  Def.'s Mem. at

10-11.  29 U.S.C. § 626(b) provides the relief available to an aggrieved party under the ADEA:

> Amounts owing to a person as a result of a violation of this chapter shall be
> deemed to be unpaid minimum wages or unpaid overtime compensation for
> purposes of section 216 and 217 of this title: <u>Provided</u>, That liquidated damages
> shall be payable only in cases of willful violations of this chapter.  In any action
> brought to enforce this chapter the court shall have jurisdiction to grant such legal
> or equitable relief as may be appropriate to effectuate the purposes of this chapter,
> including without limitation judgments compelling employment, reinstatement or
> promotion, or enforcing the liability for amounts deemed to be unpaid minimum
> wages or unpaid overtime compensation under the section.

"Thus, the text of the ADEA explicitly provides for back pay, unpaid overtime compensation,

and liquidated damages but not compensatory and punitive damages."  <u>Vanegas v. P & R</u>

Enterprises, Inc., Civil Action No. 02-478 (RMU), 2002 WL 31520357 at *2 (D.D.C. 2002).  In

fact, in the plaintiff's previous case, Judge Collyer dismissed the plaintiff's compensatory and

punitive damages demands as unavailable under the ADEA.  Lindsey, slip op. at 14, n.7; see

Prouty v. Nat'l R.R. Passenger Corp., 572 F. Supp. 200, 208 (D.D.C. 1983) (finding "that

compensatory and punitive damages are not available under the ADEA").  Because persuasive

case law and the ADEA have made it clear that compensatory damages are unavailable to the

plaintiff, the Court concludes that the defendant is entitled to summary judgment on the

plaintiff's demand for compensatory damages related to his age discrimination claim under the

ADEA.

> **D.     The Plaintiff's Compliance with the Requirements of D.C. Code § 12-309**

The defendant argues that it is entitled to summary judgment on the plaintiff's negligence

claim to the extent that the plaintiff seeks unliquidated damages such as compensatory damages

that were "not easily ascertainable at the time they arose."  Blocker-Burnette v. District of

Columbia, 730 F. Supp. 2d 200, 205 (D.D.C. 2010); see Def.'s Mem. at 13-14.  Under § 12-309

of the District of Columbia Code, the plaintiff cannot pursue an action against the District of

Columbia for unliquidated damages "unless, within six months after the injury or damage was

sustained, the [plaintiff] has given notice in writing to the Mayor of the District of Columbia of

the approximate time, place, cause, and circumstances of the injury or damages."  Damages are

considered to be liquidated if at the time they arose, they were "'an easily ascertainable sum

certain.'"  Hartford Acc. & Indem. Co. v. District of Columbia, 441 A.2d 969, 974 (D.C. 1982)

(quoting Kiser v. Huge, 517 F.2d 1237, 1251 (D.C. Cir. 1974)).  While "compliance with

[Section 12-309] is mandatory as a prerequisite for filing suit against the District" for

unliquidated damages, Brown v. District of Columbia, 853 A.2d 733 (D.C. 2004) (quoting Gross

v. District of Columbia, 734 A.2d 1077, 1081 (D.C. 1999)), " he failure to give notice under

[Section] 12-309 . . . does not bar claims for . . . liquidated damages," Blocker-Burnette, 730 F.

Supp. 2d at 204.

Applying these principles to this case, the Court finds that the plaintiff's failure to

provide notice to the Mayor will only bar a portion of the damages that he requests in his

Complaint.[5]   Specifically, the plaintiff cannot pursue his request for damages based on

"emotional distress, pain, suffering and humiliation," Compl. ¶ 68, as such damages are not

"easily ascertainable at the time they arose," Elzeneiny v. District of Columbia, 699 F. Supp. 2d

31, 34 (D.D.C. 2010) (barring damages for pain and suffering because the damages were "not

easily ascertainable at the time they arose and therefore qualify as unliquidated damages under §

12-309.").   As for the remainder of his prayer for damages, however, the Court finds that such

relief is potentially available to the plaintiff, notwithstanding the requirements of Section 12-309.

The plaintiff's claim for lost wages is essentially a request for a "back pay award[, which is]

generally considered a form of equitable relief,"[6] and not "unliquidated damages." Id.  Likewise,

his request for "declaratory and injunctive relief concerning the illegal nature of the policies and

practices" at issue in this case, Compl. at 10, fall outside the scope of Section 12-309, Lively,

451 F. Supp. at 1000.  The plaintiff's request for attorneys' fees also fall outside the ambit of

unliquidated damages, as "the general rule [in the District of Columbia] is that attorneys' fees are

not considered damages at all[, and t]hus, . . . the absence of notice under [Section]12-309 does

not bar [the plaintiff]from recovering [his] attorney[s'] fees." Caudle v. District of Columbia,

---

[5] The Court need not consider whether the plaintiff's demand for punitive damages is barred by § 12-309, as the plaintiff is no longer pursing an award of punitive damages.  See supra at 11.

[6] While the plaintiff, in his Complaint, does not specifically request back pay in his prayer for relief, he does request back pay in paragraph 68 of his Complaint, where he states that "[a]s a direct and proximate result of the breach, and without [the] plaintiff in any way contributing thereto, . . . [the p]laintiff has also incurred substantial amount of lost wages, and other costs and expenses."  Compl. ¶ 68.

Civil Action No. 08-205 (HHK), 2008 WL 3523153 at *3, (D.D.C. 2008).  Finally, the plaintiff's

request for an award of his litigation related costs does not constitute a request for unliqudated

damages; even though, at present, the amount of costs in this case have "not [been] rendered

certain by a judgment or agreement," these costs are nonetheless liquidated because they are

"capable by ascertainment by computation" at the time they arise.  District of Columbia v. World

Fire & Marine Ins. Co., 68 A.2d 222, 225 (D.C. 1949).  Accordingly, with the exception of his

request for damages resulting from "emotional distress, pain, suffering and humiliation," Compl.

¶ 68, Section 12-309 does not bar the plaintiff from pursuing the other damages he seeks to

recover based on his negligence claim.

### E.      The Merits of the Plaintiff's Negligence Claim

Finally, the defendant argues that the "plaintiff cannot establish negligence absent expert

testimony."  Def.'s Mem. at 14.  Specifically, the defendant asserts that

> [t]he manner in which the District was purportedly required, but failed, to comply
> with unspecified 'rules, regulations, procedures and laws then in effect within the
> District of Columbia Fire and Emergency Medical [Services] Department and in
> the District of Columbia' is not one within the realm of the everyday experiences
> of a lay person and is distinctly related to the firefighting profession.

Def.'s Mem. at 15.

"[E]xpert testimony is needed if 'the subject matter is too technical for the lay juror. . . .'"

District of Columbia v. Hampton, 666 A.2d 30, 36 (D.C. 1995) (quoting Beard v. Goodyear Tire

& Rubber Co., 587 A. 2d 195, 200 (D.C. 1991)).  With regard to claims of negligence, expert

testimony is "required . . . regarding the applicable standard of care, unless the subject matter is

'within the realm of common knowledge and everyday experience'" of the jurors.  District of

Columbia v. Arnold & Porter, 756 A.2d 427, 433 (D.C. 2000) (quoting District of Columbia v.

White, 442 A.2d 159, 164 (D.C. 1982)).  In other words, the "'plaintiff must put on expert

testimony to establish what the standard of care is if the subject in question is so distinctly

related to some science, profession[,] or occupation as to be beyond the ken of the average

layperson.'" Id. (quoting Messina v. District of Columbia, 633 A.2d 535, 538 (D.C. 1995)); see

also Hampton, 666 A.2d at 36 ("In the substantially smaller number of cases falling within the

common[-]knowledge exception, we have refused to require expert testimony when the issue

before the jury did not involve either a subject too technical for lay jurors to understand or the

exercise of sophisticated professional judgment.").

   In this case, the Court is not persuaded that expert testimony is required for the plaintiff

to establish his prima facie case of negligence.  While the Court agrees that in some instances

expert testimony is necessary to assist jurors in determining whether a regulation or statute has

been violated,[7] the Court finds entirely lacking from the defendant's submissions why, in this

particular instance, jurors' general knowledge is insufficient to determine whether the District of

Columbia failed to comply with either federal anti-discrimination laws or the District of

Columbia Fire and Emergency Medical Services Department's rules, regulations, procedures,

and laws that were in effect at the time of the alleged discrimination.  In fact, the Court does not

---

[7] While the defendant cites several cases in support of its argument that the plaintiff is required to present expert testimony to establish his negligence claim, the Court finds all of these cases inapposite, as each case concerned a subject area that required either a professional degree in order to acquire the knowledge about the subject on which the negligence claim was based, or specialized training to perform a job that allegedly contributed to the negligent conduct.  See In Re C.W., 916 A.2d 158, 167 (D.C. 2007) (concluding that "the applicable standard of care – i.e., the nature and amount of supervision the District was obliged to exercise over Mr. and Mrs. D.'s disposition of the foster care payments – was surely 'beyond the ken' of the average lay person, and expert testimony would therefore be required"); Young v. District of Columbia, 752 A.2d 138, 146 (D.C. 2000) (concluding "that the level of training to which the District should be held in training police officers in (landlord-tenant disputes) is not within the common knowledge of lay persons"); District of Columbia v. Hampton, 666 A.2d 30, 36-37 (D.C. 1995) (concluding "that the selection of foster parents and the supervision of the care they provide are not activities 'within the realm of common knowledge and everyday experience,'" because "social work is a licensed profession in the District of Columbia, the practice of which is limited to persons with specialized training"); Etheredge v. District of Columbia, 635 A.2d 908, 917-918 (D.C. 1993) (concluding that although the plaintiff asserted "that the District itself was negligent in connection with the hiring, training, and supervision of Officer Paige . . . the jury was never made aware, by expert testimony, of 'recognized standards concerning such  training'" and because of this "no reasonable juror could have found negligence on the part of the District in the hiring, training or supervision of Officer Paige.").

find that either a technical background or sophisticated professional judgment is necessary to determine whether the defendant engaged in age discrimination because jurors are regularly called upon by the courts to make such determinations without expert testimony.  See, e.g., Zuniga v. Boeing Co., 133 F. App'x. 570, 581 (10th Cir. 2005) (rejecting district court's holding that expert testimony was required to assist the jury in interpreting statistical evidence and determining whether employer intentionally discriminated against the plaintiff based on his age).  Therefore, this Court finds expert testimony unnecessary to establish the standard of care in this case; accordingly, the defendant's motion for summary judgment on the plaintiff's negligence claim is denied.

## IV.    Conclusion

For the foregoing reasons, the Court concludes that the plaintiff may proceed with his ADEA and negligence claims against the defendant, although he is barred from seeking certain types of requested damages.  The Court's reasoning is based on the fact that the plaintiff has presented sufficient evidence that the defendant's legitimate, nondiscriminatory reason for failing to notify him of the vacant Canine Handler position in 2005 was a pretext for impermissible discrimination, but the Court finds that the ADEA bars the plaintiff from seeking compensatory damages based on this claim.  With regard to the plaintiff's negligence claim, the plaintiff's failure to provide notice to the Mayor of the District of Columbia, as required under D.C. Official Code § 12-309, bars him from seeking unliquidated damages, such as damages for emotional distress, pain, suffering, and humiliation.  However, the plaintiff can nonetheless pursue his negligence claim to the extent he is seeking damages falling outside the reach of Section 12-309, i.e., relief that does not qualify as damages such as lost wages and attorneys' fees, as well as damages that are easily ascertainable when they arise like litigation costs.

Finally, the Court finds that the plaintiff is not required to present expert testimony to establish the appropriate standard of care for his negligence claim.  Accordingly, the Court must grant in part and deny in part the defendant's motion for summary judgment.

SO ORDERED this 14th day of September, 2011.[8]

REGGIE B. WALTON
United States District Judge

---

[8] An order is being issued contemporaneously with this memorandum opinion (1) granting in part and denying in part the defendant's motion for summary judgment, (2) barring the plaintiff from pursuing recovery of unliquidated damages for his negligence claim.